## SHREVEPORT DRUG CO. v. JACKSON, Prohibition Director, et al.

(District Court, W. D. Louisiana. September 4, 1924.)

No. 203.

**1. Corporations ⊂⇒1—One person may own all stock of corporation, and yet that entity be entirely responsible for its affairs, as distinguished from individual.**

One person may own all the stock of a corporation, and yet that entity be entirely responsible for its affairs, as distinguished from the individual, though certain corporate action could not be taken without more stockholders.

**2. Intoxicating liquors** ⚖106(4)—**Druggist's permit should not be revoked for isolated infractions of regulations by employees, without knowledge or consent of responsible head.**

Druggist's permit to corporation to dispense intoxicants should not be revoked for isolated infractions of regulations by employees or persons without knowledge or consent of responsible head, but it is duty of permittee to see that all reasonable precautions are taken to prevent their occurrence, and, if they do, that measures be taken to prevent repetition.

**3. Intoxicating liquors** ⚖108(10) — **Revoked permit ordered restored on compliance by permittee with conditions.**

Druggist's permit to dispense intoxicants, revoked by prohibition director, *held* to be restored on compliance by permittee with conditions concerning maintenance of safe and separate room or locker with proper keys.

In Equity. Bill by the Shreveport Drug Company against O. D. Jackson, Prohibition Director, and others, to review ruling revoking druggist's license. Ruling set aside, and permit restored, on conditions.

Wilkinson, Lewis & Wilkinson and Jos. H. Levy, all of Shreveport, La., for plaintiff.

Philip H. Mecom, U. S. Atty., of Shreveport, La., and William L. Taggart, Sp. U. S. Atty., of Washington, D. C., for defendants.

On the Merits.

DAWKINS, District Judge. The Shreveport Drug Company, as a result of reports made by the field agents of the prohibition director for the state of Louisiana, was, on the 18th day of February, 1924, in accordance with the provisions of section 9 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½dd), cited to appear before the said director and show cause why its permit to dispense intoxicants as a druggist should not be revoked. The grounds of complaint set forth in the notice were as follows:

"(1) Permittee is not in good faith conforming to the provisions of the National Prohibition Act and regulations promulgated thereunder, in that permittee, through carelessness of its management and inadequate protection, permitted the loss of 17 bottles of wine; the said loss having occurred between December 24, 1923, and January 9, 1924.

"(2) That on November 30, 1923, permittee's president, Mr. John P. Scott, took from their place of business a bottle of wine containing one-fifth of a gallon, without a prescription.

"(3) That the said John P. Scott, manager and president of the permittee, then caused one of its employees, Mr. Reece Epperson, to obtain a prescription for the aforesaid bottle of wine from Dr. V. Simmons, in order to cover the shortage made through his taking aforesaid bottle of wine; said prescription being from Book No. B–8881, blank No. 53.

"(4) That said John P. Scott placed in charge of the prescription department an employee named Harley L. Vivian, about 19 years old, with orders to fill ordinary medicinal prescriptions written by qualified physicians, which prescriptions frequently call for the use of alcohol; the same being contrary to the following excerpt from section 6, paragraph 2, National Prohibition Act: 'No permit shall be issued to anyone to sell liquor at retail, unless the sale is to be made through a pharmacist designated in the permit and duly licensed under the laws of his state to compound and dispense medicine prescribed by a duly licensed physician.'

"(5) That a shortage of two quarts of wine, found by Mr. Reece Epperson, on or about September 4, 1923, was covered by the obtainance of two prescriptions for a quart of wine each, by Mr. Reece Epperson, from Dr. Ruffin Paine, being from prescription Book No. B–8550, blanks Nos. 11 and 12. In issuing these two prescriptions, two employees of the store permitted their names to be used, the same being Frank M. Dugan and R. A. Porter. That such action was done with the knowledge and consent of Mr. John P. Scott.

"(6) That on December 24, 1923, John P. Scott took a quart of wine out of the locker of permittee, without first obtaining a prescription and without having it properly labeled; that about 45 minutes later he returned with a prescription issued by Dr. Ruffin A. Paine in the name of Mrs. P. Youree, said prescription being from Book No. B–9094, blank No. 57; that in fact Mrs. Youree was not a patient of Dr. Paine, a fact well known to Mr. Scott, and the prescription was obtained to cover the illegal taking of the aforesaid bottle of wine.

"(7) That the permittee is not legally incorporated under the laws of the state of Louisiana, and was organized contrary to Act 267 of 1914, Louisiana Legislature, and the permit for said drug company was obtained through an evasion of the National Prohibition laws, and was obtained for the purpose of permitting the management of said drug company to operate under a per-

mit, without any personal responsibility or liability.

"(8) That in this connection Mr. John P. Scott filed an application for renewal of permit, dated August 15, 1923, in which application it was stated that Mr. Reece Epperson was at that time the secretary-treasurer of the permittee, which application was sworn to by the said Mr. Scott on said date as being a statement of facts; that said Reece Epperson was in fact not an officer of the permittee and had no stock whatever in the corporation.

"(9) That promiscuous drinking of alcoholic preparations has been going on in the prescription department of the permittee's store, and consequently false reports covering the use of alcohol have necessarily been filed.

"(10) That Mr. Paul S. Lane, pharmacist for permittee on November 1, 1923, obtained a prescription from Dr. Ruffin A. Paine, which was canceled on the same date by Reece Epperson, also pharmacist of the permittee, said pint of whisky issued by permittee on said prescription, all of the parties well knowing that said whisky was to be used and was used by Dr. Ruffin A. Paine."

The Shreveport Drug Company, hereafter referred to as the permittee, answered each specification of the complaint as follows:

"Now comes the defendant in rule, the Shreveport Drug Company, Limited, through its president, John P. Scott, and for answer to the rule to show cause why its permit should not be revoked and canceled, specially denies each and every charge set forth in the grounds on which said rule issued, as follows:

"(1) This charge is denied, and permittee shows that it has in good faith endeavored to conform to all of the provisions of the National Prohibition Act, and regulations promulgated thereunder, and that in the conduct of its business, it has diligently endeavored to secure pharmacists and employees of the highest integrity and that the said employees and pharmacists have been especially enjoined by permittee, through its president, John P. Scott, to carry out strictly all of the regulations and provisions of the National Prohibition Act.

"(2) In this connection permittee admits the loss of 17 bottles of wine between December 24, 1923, and January 9, 1924, but avers that it was through no carelessness of permittee that the said loss occurred, and

that, immediately on discovery of the said loss, permittee promptly reported the same, and since said loss has diligently endeavored to discover the cause of the same.

"(3) It is admitted that permittee's president, John P. Scott, ordered a bottle of wine on November 30, 1923, on Reece Epperson's suggestion that said Epperson would obtain a prescription for the same, but shows that said bottle of wine was taken away in good faith from the place of business of permittee at least ten (10) days following the date on which the same was ordered, and after a prescription for same had been regularly issued and canceled.

"(4) This charge is denied, but permittee admits that John P. Scott permitted Reece Epperson to obtain a prescription for the aforesaid bottle of wine from Dr. V. Simmons, and in this connection defendant avers that the said Mr. Reece Epperson prepared the said bottle of wine for delivery to John P. Scott, the day after he had returned from the office of Dr. V. Simmons, and that the said John P. Scott permitted the said bottle of wine so prepared to remain in the narcotic locker of the said Shreveport Drug Company for at least ten (10) days after he was advised that the same had been prepared for him, and that he removed the same in good faith and after the said Epperson had obtained a prescription for the same, as directed by the said John P. Scott, and in this connection permittee avers that the said John P. Scott is now, and has been for a long time, suffering from a mitral regurgilar valve of the heart, and requires at times a light stimulant as a tonic for said condition, and that the said bottle of wine was obtained by the said John P. Scott and issued by permittee in good faith and as a remedy for the condition of the said John P. Scott.

"(5) This charge is denied, and in this connection permittee avers that the said Harley L. Vivian was at no time directed to fill prescriptions calling for the use of alcohol; that he did not have access to the locker in which alcohol and intoxicating liquors were kept by permittee, and if the said Harley L. Vivian did fill such prescriptions, it was without the knowledge or consent of permittee, and against its expressed directions.

"(6) Permittee has no knowledge of the matters and things set forth in this charge, except as have been brought to light by an investigation recently made concerning this matter on information received by John P.

Scott from Messrs. Acosta and Turner, prohibition agents, which said information was received on or about January 15, 1924, and, if the said two (2) quarts of wine were lost or stolen, permittee avers that the same occurred through the fault of the said Epperson, and without the knowledge or consent of permittee, or any of its officers, and permittee further avers that it did not countenance, authorize, or have any knowledge of issuing of prescriptions to cover said shortage, and if the said shortage was so covered, as alleged, it was done by the said Epperson without permittee's knowledge or consent.

"(7) Permittee denies that John P. Scott took a quart of wine out of the locker of permittee as alleged, and on the contrary avers that the said John P. Scott in good faith obtained from Dr. Ruffin A. Paine a prescription for said wine in the name of Mrs. P. Youree, the aunt of said John P. Scott, an esteemed and reputable lady, 80 years of age, residing in the city of Shreveport, and suffering with a malady that requires the use of said wine; that the prescription was issued in good faith, and that the said quart of wine was delivered to the said Mrs. Youree for the purpose set forth hereinabove.

"(8) This charge is denied.

"(9) This charge is denied for lack of sufficient [evidence], and in the alternative permittee shows that, [if] its said application stated that the said Epperson was the secretary-treasurer of permittee, the said statement was falsely made by the said Epperson, and that permittee's president, Mr. Scott, signed the said statement on the representations of the said Epperson, that it was properly made out for the purpose of obtaining a renewal of the permit, and, if the application contained the statement that the said Epperson was secretary-treasurer at the time the said Scott signed the same, it was signed by the said Scott through error and inadvertence, and through reliance and trust imposed by him in the said Epperson, and without the knowledge of false representation.

"(10) Permittee denies that promiscuous drinking of alcoholic preparations has been going on in its prescription department, but avers that it has just learned that the said Epperson, who was employed by permittee in good faith, and with utter reliance on his business and moral integrity, at various times did prepare alcoholic preparations and dispense the same among his friends during the absence of permittee's president, John P. Scott, from permittee's place of business, and permittee avers that the said alcoholic preparations were dispensed by the said Epperson without the knowledge or consent of permittee, and against the direct orders of permittee, and that permittee is therefore not responsible for the same.

"(11) This charge is denied, and permittee avers that since the service of the rule on permittee in this cause it has made an investigation of facts in this connection, and learned that the prescription referred to in this charge was fraudulently obtained by the said Epperson, without the knowledge or consent of Paul S. Lane, who was named as the patient in said prescription, and that the said pint of whisky was issued fraudulently by the said Epperson, without the knowledge or consent of permittee of the manner in which the same was obtained, or the purpose for which same was used.

"Further answering, permittee shows that the said Reece Epperson left its employ in the month of December, 1923, and that permittee had no knowledge or intimation of the fraudulent action of the said Epperson during the time he was employed by permittee, and that permittee has secured, to the best of its ability, an honest and efficient successor for the said Reece Epperson, and has discharged such employees as permittee has any reason to suspect of violation of the National Prohibition Act, and is endeavoring to comply with the provisions of the same in utter good faith."

Hearing was had before the director; the department being represented by its regular counsel, and the permittee by its own attorneys. After full hearing, there was a finding sustaining all counts of the complaint and revoking the permit for a period of one year. Thereupon the permittee brought this proceeding, as authorized by the said statute, to have the action of the commissioner, through his director, reviewed by the court.

After a careful reading of the record in this case I am not impressed that there was a willful and deliberate purpose on the part of the complainant (complainant here; defendant before the director), through its managing officer and directing head, to evade or violate the terms and conditions under which the permit is allowed to be issued by the Commissioner of Internal Rev-

enue. However, there have been infractions of the strict letter of the Prohibition Law and an insufficient protection of the liquors or intoxicants, which, in my opinion, justify withdrawal of the permit until the permittee shall have provided itself with proper facilities and safeguards for insuring that the intoxicants will not be unlawfully consumed or disposed of.

Taking up the charges before the director and his findings seriatim, my conclusions are as follows:

1. I agree with the director that the loss of the 17 bottles of wine was due to the permittee's failure to provide a safe and secure locker or container in which said liquors could be kept without exposure to those who might have access to the prescription room; but I do not believe that this action was in bad faith in the sense of a willful desire to violate the law. A separate room, closet, or locker, with proper lock, to which only the person or persons authorized to dispense the liquor and named in the permit, as required by the statute, would have access, should be provided by the permittee. With such provision, the representative or representatives charged with dispensing the liquors could be held responsible therefor.

2 and 3. Permittee in its answer admits that its president, John P. Scott, took the bottle of wine complained of in this instance from the locker, upon the suggestion of the pharmacist, Reece Epperson, that he would obtain a prescription therefor, but that it was not taken from the drug store until this was done. In explanation of this action, it is proven that the said Scott, because of an affection of the heart, has to have a certain amount of stimulants at times, and that this wine was obtained for that reason. Although the letter of the law may not have been violated, the said Scott should have applied personally for the prescription. It appears very irregular, to say the least, to obtain a prescription in the manner as was done in this instance. Of course, in a case where, under the particular circumstances, an examination were "impracticable," under the language of the statute, a physician would be justified in acting "upon the best information obtainable * * * in good faith," where the physician believed "that the use of such liquor as a medicine, by such person, is (was) necessary and will (would) afford relief to him from some known ailment." Section 7 of title 2 of the Prohibition Act (Comp. St.

Ann. Supp. 1923, § 10138½cc). Here again, however, I do not find that there was an intentional violation of the law.

4. I do not find that this charge is sustained by the evidence. Vivian, who was not a licensed pharmacist or dispenser of medicines, was allowed access to the prescription room where the liquors were kept, but was not authorized to, and according to his own testimony, though an adverse witness to complainant, did not, dispense such intoxicants.

5. The evidence in support of this charge does not satisfy me that Scott, the president and manager of permittee, had knowledge of the disappearance of these two bottles of wine, or that they were covered by obtaining prescriptions in the manner alleged. The evidence is conflicting to some extent, but it is evident that some of that adverse to Scott was given by witnesses smarting under the fact that they had been discharged by him for the reason that they were suspected of getting some of the missing liquors, and others had been rendered hostile by being informed by the prohibition agents that Scott had accused them of being responsible for conditions which existed in the drug store. There is no such preponderance of the evidence as justifies the conclusion that Scott was a party to these acts, if they actually occurred.

6. What has been said with reference to findings Nos. 2 and 3 applies equally to this charge. While Scott may not have been guilty of a technical violation of the statute in obtaining this prescription from one who was not the physician of Mrs. Youree, and without said physician having seen or examined such patient, nevertheless, a habitual pursuit of the practice used in this instance would go far toward nullifying the spirit of the law.

[1] 7. The finding under this specification is erroneous both as a matter of law and fact. In the first place, there is no reason why one person may not own all of the stock of a corporation, and yet that entity be entirely responsible for its affairs as distinguished from the individual. Of course, official corporate action could not be had, such as directors' meetings and the exercise of powers required to be performed in that manner; but the ordinary business of the corporation, if it were originally legally organized in good faith, could be carried on and continued, even though there be but one stockholder. There is no doubt but that the corporation was originally validly

formed, and that one or two shares of stock stand in the name of employees of the concern for purposes of corporate action. This charge and the evidence in support thereof affords no ground for revoking the permit.

8. It is not at all certain that the name of Epperson appeared in the application for permit as secretary when it was originally executed. His name as such officer is filled in in a different kind of type from the rest of the application, which appears to be in the type of a machine used by the bookkeeper of the business, who has been employed for many years, and it is not clear as to how this happened. Here again, however, I think Scott has shown a want of proper diligence, in that he should see and know that a matter of such importance is properly and correctly handled. He is unable to say what the real condition of the application was, stating that he signed it without careful reading, relying upon his confidence in Epperson, the pharmacist, who had been with him for a long time.

9. The evidence on this point is very vague and indefinite; but, if there was any promiscuous drinking of intoxicants in the store, I am convinced that it was without the knowledge or acquiescence of Scott.

[2] 10. Scott, the executive head of the institution, was not connected with or shown to have had a knowledge of this transaction. While I do not believe that the permit of a concern like this should be revoked for isolated infractions of the regulations, by employees or persons without the knowledge or consent of the responsible head, nevertheless it is the duty of the permittee to see that all reasonable provisions and precautions are taken to insure that they shall not occur, and, if they do, that responsibility therefor may be readily established and measures taken to prevent repetition; in other words, the permittee should act diligently and in absolute good faith.

[3] My conclusion on the whole is, therefore, that the ruling of the director should be modified to the extent that, when the complainant shall have provided a safe and separate room, closet, or locker wherein to keep such liquors, with keys for access thereto furnished only to those persons named in the application for permit, or others subsequently employed who meet the requirements of the law as persons eligible to dispense intoxicants, and whose names shall be supplied to the director and filled in the permit, and when the complainant shall have furnished the said director with all of the information required by the regulations of the Commissioner of Internal Revenue, the permit should be restored, reserving to either side the right to apply to this court again for a determination of whether the terms of this decree have been complied with.

It is therefore ordered and decreed that the ruling of the said director be and the same is hereby set aside, and that the permit to dispense intoxicants be revived and restored to the said complainant upon compliance with the provisions and terms of this judgment.